# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-0189V
UNPUBLISHED

| | |
|---|---|
| REBECCA E. WOOD,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: November 24, 2020<br><br>Special Processing Unit (SPU);<br>Dismissal; Insufficient Evidence;<br>Prior Shoulder Pain; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Douglas Lee Burdette, Burdette Law, PLLC, North Bend, WA, for petitioner.*

*Lara Ann Englund, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION[1]

On February 1, 2019, Rebecca E. Wood filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. To correct several citations,[3] she filed an amended petition on March 13, 2019. ECF No. 8. Petitioner alleges a Table injury - that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on January 23, 2018. Petition at 1, ¶¶ 3, 7. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] *Compare* Petition at ¶¶ 6, 8 *with* Amended Petition at ¶¶ 6, 8.

On August 25, 2020, Petitioner filed a motion for a ruling on the record as it currently stands. Having considered both the motion and Respondent's opposition, as well as the medical records filed in this case, I find that dismissal is appropriate. As discussed in more detail below, the claim does not meet the Table requirements for SIRVA, and Petitioner has failed to provide sufficient evidence to establish causation in fact.

## I.    Procedural History

Along with her amended petition, Petitioner filed an affidavit, plus medical records from her primary care provider ("PCP") and chiropractor. Exhibits 1-3, ECF No. 9. Following the initial status conference, held on April 18, 2019, Petitioner was ordered to file a supplemental affidavit and additional medical records related to shoulder pain she appeared to have experienced prior to vaccination, in July 2017, following a motor vehicle accident. ECF No. 11.

More than six months later, Petitioner was ordered to show cause why the case should not be dismissed after she failed to obtain and file these records. ECF No. 16. Three months thereafter, on February 26, 2020, Petitioner filed additional medical records from her chiropractor. Exhibit 4, ECF No. 21.

On May 18, 2020, Respondent filed his Rule 4(c) Report contesting compensation in this case. ECF No. 25. Respondent argues that Petitioner's injury does not satisfy the requirements for a Table SIRVA because she suffered prior shoulder pain, she has failed to establish that the onset of her current shoulder pain occurred within 48 hours of vaccination, her current pain is not limited to her shoulder, and x-rays showed degenerative changes in her cervical spine that might alternatively explain her symptoms. *Id.* at 6. Respondent also argues that Petitioner has not proven causation in fact, and therefore a non-Table version of this claim would not likely succeed. *Id.* at 7.

On August 25, 2020, Petitioner filed medical records from her physical therapist, a May 28, 2020 electronic letter regarding EMG results, and an "After Visit Summary" from a July 7, 2020 neurologist appointment, along with a supplemental affidavit. Exhibits 5-8, ECF Nos. 27-30.[4] In this supplemental affidavit, which is more concise that the affidavit

---

[4] Only the physical therapy records were assigned an exhibit number. *See* Exhibit 5, ECF No. 27. Thus, I will assign Exhibit numbers 6-8 as follows:

    1) the May 28, 2020 electronic letter filed at ECF No. 28 as Exhibit 6;
    2) the After Visit Summary neurologist filed at ECF No. 29 as Exhibit 7; and
    3) the supplemental affidavit filed at ECF No. 30 as Exhibit 8.

For pagination, I will refer to the page numbers listed in the CM/ECF heading.

executed in early February 2019, Petitioner fails to address her prior shoulder pain. *Compare* Exhibit 8 *with* Exhibit 1. She did, however, delete her earlier assertion that "[p]rior to January 23, 2018, [she] had never experienced any pain, weakness, or disability in either of [her] arms or shoulders." Exhibit 1 at ¶ 3.

On August 25, 2020, Petitioner also filed a motion for a ruling on the record as it now stands. ECF No. 32. In it, Petitioner merely restates the argument made in both petitions, adding information regarding her updated treatment. *Id.* at 1-3. Petitioner does not address the deficiencies set forth in Respondent's Rule 4(c) Report.

On September 1, 2020, Respondent filed a brief reacting to Petitioner's motion. ECF No. 33. While he expands his statement of Petitioner's medical history to include information from the updated medical records filed by Petitioner, Respondent reiterates and relies upon the same arguments he set forth in his Rule 4(c) report. *Id.*

The matter is now ripe for adjudication.

## II.   Factual History as Set Forth in Medical Records

Petitioner's medical records from treatment prior to vaccination show she suffered from common illnesses and conditions. Exhibit 2 at 1-143. Regarding any musculoskeletal issues, Petitioner was seen by her chiropractor in August 2016 for moderate pain in her right elbow, forearm, wrist, and thumb attributed to overuse while on the phone. Exhibit 3 at 1-5. Petitioner described this pain as "achy, dull, tingling, [and] weak." *Id.* at 4. When describing her general problems, Petitioner included neck, thoracic, and bilateral foot pain. *Id.* at 4-5. She visited the chiropractor a total of 19 times for treatment of these conditions in August through November 2016. *Id.* at 16-38.

Approximately one year later, on August 1, 2017, Petitioner again sought chiropractic care for cervical and thoracic pain following a motor vehicle accident in July 2017. Exhibit 3 at 6-7, 36-37. Cervical degenerative changes, seen on x-rays, were noted to be a complicating factor. *Id.* at 36-37. That same day, Petitioner mentioned her injury when she called her PCP for prescription refills. Exhibit 2 at 144-45.

From August through December 2017, Petitioner was seen by her chiropractor for treatment of her pain on 27 occasions. Exhibit 3 at 37-70. During multiple visits in August 2017, she also complained of pain into her left arm. *Id.* at 39-43. When seen by her PCP for this neck and back pain on August 10, 2017, she described "bilateral shoulders, neck, and middle back pain" and daily headaches but reported that her left arm pain was improving. Exhibit 2 at 149.

Petitioner did not mention her left arm pain during chiropractic visits in September through December 2017. Exhibit 3 at 47-70. However, when seen by her PCP on September 19, 2017, Petitioner was observed to have "muscular tenderness and trigger points in her bilateral upper trapezius and paracervical muscles." Exhibit 2 at 159.

On December 1, 2017, Petitioner was seen by her PCP for hypothyroidism, facial swelling and peri-menopausal and menopausal symptoms. Exhibit 2 at 171-73. She had previously complained of similar symptoms both prior to and after her July 2017 accident. *See, e.g., id* at 149. When she returned for a follow-up appointment for treatment of these symptoms on January 23, 2018, she received the flu vaccine alleged to have resulted in her SIRVA. *Id.* at 188-92. The vaccine record indicates the vaccine was administered in Petitioner's left deltoid. *Id.* at 387.

Three days later, on January 26, 2018, Petitioner visited her PCP to request a slight change in her acne medication. Exhibit 2 at 193. She then emailed her PCP requesting labs regarding a list of 12 symptoms she sent by "My Chart" (presumably the clinic's medical portal). *Id.* at 194. Petitioner has not filed this email, and the medical record fails to describe these symptoms further. At her next visit on February 9, 2018, described as a follow-up, Petitioner requested 20 days of estrogen and labs to check her thyroid and hormones. *Id.* at 195. There is no mention of left shoulder pain in this medical record. *Id.* at 195-98. Petitioner sought a refill of medication on February 13, 2018. *Id.* at 199. She emailed her PCP on February 19, 2018, but there is no information regarding the contents of this email. *Id.* at 200.

On February 27, 2018, Petitioner was seen by her PCP for left shoulder pain, which she attributed to her flu vaccine and described as initial pain which transformed into an aching pain after four days. Exhibit 2 at 201-02. She added that she also was experiencing numbness and tingling in her left arm, mostly at night. *Id.* at 202. Observing tenderness and decreased range of motion ("ROM"), Petitioner's PCP diagnosed her with left shoulder impingement or bursitis. *Id.* at 201, 204. Responding to Petitioner's suspicion that her pain was caused by the flu vaccine she received, her PCP reassured her that was "not likely." *Id.* at 204.

That same day and twice in March 2018, Petitioner sought treatment from her chiropractor for her left shoulder pain and intermittent tingling in her left ear. Exhibit 3 at 71-74. She began physical therapy ("PT") at her PCP clinic on March 16, 2018. Exhibit 2 at 205. At that visit, she again attributed her left shoulder pain to the flu vaccine she received but reported that the numbness and tingling in her left hand occurred nightly beginning in February 2018. She added that she was not sure if these symptoms were related to her left shoulder pain. Reporting temporary improvement after visits to her chiropractor, Petitioner described left shoulder pain that worsened when reaching

overhead. *Id.* The physical therapist assessed Petitioner's condition as "most consistent with soft tissue contractile dysfunction . . . suggesting strain or irritation of [the] anterior deltoid." *Id.* at 207. Petitioner attended three more PT sessions in March and April 2018. *Id.* at 210-214, 216-20, 222-229.

On April 23, 2018, Petitioner called her PCP complaining of intermittent left-sided chest pain she believed was related to her January 2018 flu shot. Exhibit 2 at 230. When seen by her PCP the next day, Petitioner reported that her left arm pain had extended to her shoulder blade and left chest. *Id.* at 232. She described numbness in her hand as the pain radiated down her elbow. Petitioner's PCP prescribed Gabapentin and recommended she decrease her Cymbalta dosage. *Id.*

Petitioner attended six additional PT sessions in April through June 2018. Exhibit 2 at 238-242, 254-258, 265-69, 271-275, 277-280, 286-90. She reported her more recent pain in her chest and numbness in her hand at these visits. *Id.* at 239, 255. Petitioner's PCP administered a steroid injection to Petitioner's left shoulder on June 15, 2018. *Id.* at 291-92.

When she sought treatment again on September 18, 2018, Petitioner reported that she had obtained instant relief from the June 2018 steroid injection, but that her pain had returned approximately two weeks ago. Exhibit 2 at 328-29. At this visit, Petitioner's PCP opined that it was "difficult for [him] to conceive an injury to the tendon from the flu shot injection." *Id.* at 329. Ruling out a neurological disorder or rotator cuff tear, he described Petitioner's condition as "[t]endonitis or tendinosis of [the] supraspinatus tendon." *Id.* He administered another steroid injection and prescribed additional PT. *Id.* at 328-30.

Petitioner attended PT at Biosports Physical Therapy from October through December 2018. Exhibit 5. On her October 9, 2018 intake form, Petitioner reported shoulder joint pain and numbness in her elbow and hand after receiving a flu vaccine in January 2018. *Id.* at 13. Throughout these records, there are references to ulnar and median nerve irritation. *E.g., id.* at 5. On October 28, 2018, Petitioner called her PCP, complaining of chest pain but denying shortness of breath or numbness in her left arm. Exhibit 2 at 344. She attributed this chest pain to "stress and anxiety." *Id.*

Petitioner returned to her chiropractor on December 28, 2018, complaining of pain in her neck and upper thoracic, left anterior and posterior shoulder, and lumbar and lumbosacral junction. Exhibit 3 at 79. For all complaints, Petitioner reported a gradual onset without a known cause. *Id.*

When seen again by her PCP on December 31, 2018, Petitioner indicated that she felt like her left shoulder pain had spread. Exhibit 2 at 375. Although mainly on her left

side, she reported "bilateral hand joint pain." *Id.* She described intermittent numbness but denied weakness or dropping items. *Id.* Petitioner's PCP assessed Petitioner with multiple joint pain which he believed was multifactorial, indicated he would honor Petitioner's request to rule out autoimmune and inflammatory markers, and provided referrals for massage therapy and orthopedic surgery. *Id.* at 378-79.

Petitioner received massage therapy for the conditions she described on thirteen occasions, from March through September 2019. Exhibit 4. At times, she also complained of pain in both wrists (*e.g., id* at 31), her feet (*e.g., id.* at 29), and her left knee and ankle (*e.g., id.* at 11).

It appears Petitioner underwent an EMG test prior to May 2020, the results of which were normal. *See* Exhibit 6. It also appears Petitioner visited a neurologist and was diagnosed with brachial neuropathy on or before July 7, 2020. *See* Exhibit 7. However, medical records from this neurologist were not filed by Petitioner.

## III.   Applicable Legal Standards

Under Section 13(a)(1)(A) of the Act, a petitioner must demonstrate, by a preponderance of the evidence, that all requirements for a petition set forth in section 11(c)(1) have been satisfied. A petitioner may prevail on her claim if the vaccinee for whom she seeks compensation has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If petitioner establishes that the vaccinee has suffered a "Table Injury," causation is presumed.

If, however, the vaccinee suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, petitioner must prove that the administered vaccine caused injury to receive Program compensation on behalf of the vaccinee. Section 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. Section 13(a)(1)(A). This standard is "one of . . . simple preponderance, or 'more probable than not' causation." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1279-80 (Fed. Cir. 2005) (referencing *Hellebrand v. Sec'y of Health & Human Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993). The Federal Circuit has held that to establish an off-Table injury, petitioners must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1351 (Fed. Cir 1999). *Id.* at

1352. The received vaccine, however, need not be the predominant cause of the injury. *Id.* at 1351.

The Federal Circuit has indicated that petitioners "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that a vaccine was a substantial factor in bringing about the injury. *Shyface*, 165 F.3d at 1352-53 (quoting *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). There also "must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* The Federal Circuit subsequently reiterated these requirements in its *Althen* decision. *See* 418 F.3d at 1278. *Althen* requires a petitioner

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Id.* All three prongs of *Althen* must be satisfied. *Id.*

Finding a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Further, contemporaneous medical records are presumed to be accurate and complete in their recording of all relevant information as to petitioner's medical issues. *Cucuras v. Sec'y of Health & Human Servs.*, 993, F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

"It must [also] be recognized that the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance. Since medical records typically record only a fraction of all that occurs, the fact that reference to an event is omitted from the medical records may not be very significant." *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (Fed. Cl. 1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992). However, in balancing these considerations, special masters in this Program have in most cases declined to credit later testimony over contemporaneous records. *See, e.g.*, *Stevens v. Sec'y of Health & Human Servs.*, No. 90–221V, 1990 WL 608693, at *3 (Cl. Ct. Spec. Mstr. Dec. 21, 1990); *Vergara v. Sec'y of Health & Human Servs.*, No. 08–882V, 2014 WL 2795491, at *4 (Fed.

Cl. Spec. Mstr. July 17, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recounted in later medical histories, affidavits, or trial testimony."); *see also Cucuras*, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight")).

## IV.   Analysis

Despite multiple directives over a fourteen-month period, Petitioner has failed to address the reliable record evidence that she experienced thoracic and shoulder pain during the six months *prior* to vaccination. She also has failed to provide evidence to address the other deficiencies noted by Respondent in his Rule 4(c) Report, preferring instead to file only updated medical records and a motion for a ruling on the record as it now stands. Petitioner has thus failed to offer the evidence needed to support her SIRVA claim, regardless of its form.

### A.  Table SIRVA

In addition to establishing that the first symptom or manifestation of onset occurred within 48 hours of receiving the flu vaccine (42 C.F.R. § 100.3(a)(XIV) (2017), a petitioner must satisfy the requirements for a Table SIRVA injury set forth in the *Qualification and Aids to Interpretation ("QAI")* (42 C.F.R. § 100.3(c)(10)). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.* Petitioner has failed to satisfy at least three of these four criteria.

### 1. Prior Shoulder Pain

In her initial affidavit, Petitioner claimed that she had never experienced pain, weakness, or disability in either of her arms or shoulders. Exhibit 1 at ¶ 3. However, her medical records clearly show that Petitioner experienced left shoulder and arm pain prior to receiving the flu vaccine on January 23, 2018.[5] When receiving treatment for cervical and thoracic pain following a motor vehicle accident in July 2017, Petitioner complained of pain radiating into her left arm on multiple occasions. Exhibit 3 at 39-43.

Although Petitioner failed to address these instances of earlier left shoulder and arm pain, she seems to acknowledge that her initial affirmation of a lack of prior pain was incorrect -- as she removed it from her supplemental affidavit. *See* Exhibit 8. Given the clear and unrebutted evidence of prior left shoulder and arm pain in Petitioner's medical records, I find Petitioner has failed to meet the first criteria for a Table SIRVA set forth in the QAI.

### 2. Location of Pain

When Petitioner first sought treatment for her left shoulder pain from her PCP in late February 2018, she reported that she was *also* experiencing numbness and tingling in her left arm. Exhibit 2 at 202. When seen by her chiropractor that same day, she reported tingling in her left ear in addition to her left shoulder pain. Exhibit 3 at 72. When she first attended PT in March 2018, Petitioner again described numbness and tingling in her left hand. Exhibit 2 at 205. By the next month, she told her PCP that her left shoulder pain had spread to her shoulder blade and chest and was radiating down her left arm. *Id.* at 232. By December 2019, Petitioner was reporting pain in her neck and lower back as well as her left shoulder and arm. Exhibit 3 at 79.

---

[5] Petitioner also experienced pain in her right arm in 2016. Exhibit 3 at 1-5. While not relevant to the QAI criteria for SIRVA, the information regarding this earlier pain contained in Petitioner's medical records further contradicts Petitioner's claim that she had never experienced pain, weakness, or disability in either shoulders or arms.

The medical records contain numerous instances when Petitioner describes her pain as radiating into her chest and/or down her arm. She also describes pain in her neck and back. These facts are inconsistent with the shoulder-specific pain that must be established under the QAIs. I thus find Petitioner has failed to meet the third criteria for a Table SIRVA.

### 3.   Evidence of Other Condition or Abnormality

As stated in the QAI, a Table SIRVA is a musculoskeletal rather than neurologic injury. Yet many of Petitioner's symptoms, such as the pain radiating into her hand, numbness and weakness in her left hand, and neck and back pain, appear neurological in nature. Thus, by October 2018, approximately nine months after vaccination, Petitioner was described as having ulnar and median nerve irritation. Exhibit 5 at 5. Although the medical records contain a report of normal results from an EMG (Exhibit 6), they also indicate Petitioner was diagnosed with brachial neuritis in 2020 (Exhibit 7 at 2).

Additionally, many of the symptoms Petitioner experienced post-vaccination, such as the pain radiating down her left arm, bear a striking resemblance to the symptoms she reported after the July 2017 motor vehicle accident she experienced. The records regarding that 2017 treatment note that Petitioner was observed to have degenerative changes in her spine. Exhibit 3 at 36-37.

I find there is evidence of other conditions or abnormalities which would account for Petitioner's symptoms. Petitioner has therefore failed to satisfy the fourth criteria in the QAI for a Table SIRVA.

### 4.   Onset of Pain

Respondent also argues that Petitioner has failed to establish that the onset of her pain occurred within 48 hours of vaccination. This issue presents a more difficult question than the issues discussed above. Although Petitioner failed to report her pain when visiting, calling, or emailing her PCP during the month following vaccination, when she did seek treatment, Petitioner consistently reported pain upon vaccination with morphed into an aching pain four days later. As I already have determined Petitioner has failed to meet at least three of the four QAI requirement for a Table SIRVA, however, the outcome herein does not turn on Petitioner's success in meeting this one element.

### B.  Causation in Fact

Although Petitioner alleged only a Table injury, in the interest of providing a thorough determination I will also consider whether Petitioner has established a causation

in fact claim. As discussed in Section III, in order to provide causation in fact, Petitioner must provide preponderant evidence to satisfy all three *Althen* prongs. In this case, I find that Petitioner has failed to satisfy the second *Althen* prong - "a logical sequence of cause and effect showing that the vaccination was the reason for the injury." *Althen*, 418 F.3d at 1278.

As evidenced by the addition of SIRVA to the Vaccine Injury Table, a flu vaccine, when improperly administered, can cause a shoulder injury. However, there is little evidence to show that it did so in this case. Petitioner has failed to provide an expert report or evidence that any of Petitioner's treating physicians believed her left shoulder pain was vaccine caused. Instead, there are several entries in the medical records which indicate Petitioner's PCP opined Petitioner's symptoms were *not* vaccine caused. Exhibit 2 at 204, 239. Furthermore, the symptoms Petitioner experienced post-vaccination are similar to those she experienced prior to vaccination. Petitioner has not shown that her later symptoms were caused by the flu vaccine she received on January 23, 2018.

## V.     Conclusion

To date, and despite ample opportunity, Petitioner has failed to address numerous deficiencies noted in her case. Based on what has been offered, it is evident that she has failed to satisfy the requirements for a Table SIRVA or provide preponderant evidence of causation. Accordingly, I find Petitioner has not provided sufficient evidence to support her claim, and this case is DISMISSED. The clerk shall enter judgment accordingly.[6]

**IT IS SO ORDERED.**


                                          **s/Brian H. Corcoran**
                                          Brian H. Corcoran
                                          Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.